**UNITED STATES of America,**

v.

**Romeo H. CARDINAL.**

**Civ. A. No. 76–240.**

United States District Court,
D. Vermont.

June 23, 1978.

Jerome J. Niedermeier, Asst. U. S. Atty., Rutland, Vt., for Government.

Joel D. Cook, Vermont Legal Aid, Inc., Burlington, Vt., for defendant.

COFFRIN, District Judge.

The Government brings this action to recover on a promissory note executed by the defendant and one Joyce Cardinal, now deceased. Defendant filed original and amended answers with counterclaims and affirmative defenses, one of which alleged that the Government's action is time barred. The Government responded with a motion to dismiss and to strike portions of defendant's answer. On November 10, 1977 a hearing was held on plaintiff's motions at which both parties were represented by counsel. During the hearing it became evident that neither party was certain of the date of default on the note. Subsequently the court ordered the Government to determine the date of default and requested counsel to file a stipulation as to when any demand for payment of the promissory note was made, by whom and for what amount. This has been done.

After considering the memoranda and facts before the court, as well as the arguments of counsel, we hold that the Government's cause of action is not barred by 28 U.S.C. § 2415(a). Plaintiff's motions to dismiss counterclaims, for a more definite statement, and to strike affirmative defenses will be disposed of later.

### Facts

On June 30, 1969 defendant and Joyce Cardinal executed and delivered a promissory note to Tilo Company, Inc. for improvements made on defendant's mobile home which apparently was located somewhere in Vermont. The note provided for repayment in monthly installments and contained an optional acceleration clause whereby "[i]n case of failure of the undersigned to pay any installment on its due date, this note shall, at the option of the holder, become immediately due and payable for the unpaid balance thereof . . .." The note also contained a waiver of demand stating: "The makers and any endorsers severally waive demand, notice and protest . . . .." The note was assigned to the City Savings Bank of Pittsfield, Massachusetts, on June 30, 1969. Defendant failed to pay the August 24, 1970 installment and apparently has paid nothing on the note since that time. The City Savings Bank wrote defendant on March 11, 1971, stating in toto:

> The option to accelerate maturity of your note is exercised at this time, by reason of the fact that periodic payments have not been made in accordance with its terms. The entire balance of $3,090.24 is now due and payable.

On April 1, 1971 the note was assigned to the Federal Housing Authority (FHA) which filed this action on November 17, 1976. Thus, the action was brought within six years of when the option to accelerate the outstanding balance of the note was exercised and within six years of when the Government acquired the note, but not within six years of defendant's last payment.

### Discussion

■ Section 2415(a) of 28 U.S.C. provides that

> every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . .[1]

the United States Government. It, rather than the Vermont state statute of limitations, is ap-

1. Section 2415 is the general statute of limitations section applicable to actions brought by

Thus the question before us is when the cause of action accrued. This is a federal question. *Cf. Tessier v. United States*, 269 F.2d 305 (1st Cir. 1959) (interpretation of statute of limitations for tort actions brought against the United States, 28 U.S.C. § 2401(b)). The defendant argues that the cause of action accrued when defendant defaulted on the note; the Government argues that it accrued when the Government acquired the note. We find both arguments to be inapposite and hold that the cause of action on the balance of the note accrued on the date demand was made by virtue of the acceleration clause for payment in full. First we will discuss the Government's argument which appears to be a question of first impression in this and other federal districts.

■ The Government contends that because it had no legal interest in the note prior to the date of assignment, and because it must have acquired a cause of action before 28 U.S.C. § 2415 is applicable, time does not begin to run under that section until the date of assignment. Obviously the Government's conclusion is not compelled by the propositions it advances. Even assuming both propositions to be true,[2] § 2415 by its own terms could, and we believe does, give the Government no more time than remains of six years from the date when the holder of the note first could have sued on the note.

We have been unable to find any cases interpreting the pertinent language in § 2415, and the Government has pointed to none construing "accrues" in that or any other statute. Similarly 1A *Moore's Federal Practice* ¶ 0.321, at 3710 (2d ed. 1977), discussing suits brought by and against the federal government, does not expand on the term "accrues."

Looking at the legislative history of § 2415, we find the following information. Public Law 89–505, 28 U.S.C. § 2415, became law on July 18, 1966. According to the accompanying Senate Report, the purpose of the bill was to establish a statute of limitations which would apply to contract and tort actions brought by the United States. S.Rep.No.1328, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin.News, p. 2502 (hereinafter News). As the letter from the Attorney General of the United States appended to the Senate Report explains, the statute was proposed because prior to 1966 the general rule was that there was no limitation on when the Government could bring an action unless there was a statute specifically limiting the time. Although there were a few limiting statutes, there were "no time bars against the great majority of Government claims." News at 2513.

There is no place in the Senate Report which specifically states that the six-year period begins to run from the time a cause of action on a contract could be sued upon by some entity, whether or not that entity is the Government. However, the Report iterates and reiterates that the purpose of the law is to increase fairness to private litigants dealing with the Government.[3] As

---

plicable to the case before us. *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940).

28 U.S.C. § 2416 sets out time periods to be excluded in computing the limitations periods established in § 2415. None of those exclusions appear to be pertinent here, and the Government has not relied on any such exclusion.

**2.** The Government is correct that § 2415 does not apply to a cause of action until the federal government has been assigned the right to sue. This is a corollary of the rules that any cause of action held by the United States is limited by either a federal or a state statute of limitations and that the state statute of limitations applies until the Government acquires the cause of

action. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 141–43, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (The Government is not immune from the effects of statutes of limitations on actions acquired through assignment where the statutory period has run prior to the assignment.); *United States v. Buford*, 28 U.S. (3 Pet.) 12, 7 L.Ed. 585 (1830) (same applied to cause of action on negotiable paper). *See* 1A *Moore's Federal Practice* ¶ 0.321, at 3723 (2d ed. 1977).

**3.** Following is a sample of the language contained in the Senate Report: "[P]rivate litigants can be assured of a more fair and balanced treatment when dealing with the Government." News at 2503. The "equality of treatment . . . provided by this bill is required by modern

the Supreme Court said in *Crown Coat Front Co. v. United States*, 386 U.S. 503, 521, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967), the statute is "aimed at equalizing the litigation opportunities between the Government and private parties." *See also id.* at 521 n. 114, 87 S.Ct. 1177.

Admittedly, the focus on fairness does not preclude the Government's interpretation of § 2415, for certainly if the Government must bring an action within six years from the time when it acquires the right to sue, the private defendant is on a *more* equal footing with the Government than when the Government was allowed to bring the action at *any* time.[4] Nevertheless, there are additional factors which persuade us that the Government's interpretation is incorrect.

First, as set out in the Senate Report, the Attorney General outlined six reasons for adopting the statute of limitations for actions brought by the Government: (1) As mentioned above, to "make the position of the Government more nearly equal to that of private litigants"; (2) to "encourag[e], trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh"; (3) "to reduce the costs of keeping records and detecting and collecting on Government claims"; (4) to "encourage . . . the agencies to refer their claims promptly to the Department of Justice for collection"; (5) to "avoid . . . judicial hostility to old claims asserted by the Government"; and (6) to "minimiz[e] . . . collection problems arising with respect to debtors who have died, disappeared, or gone bankrupt." News at 2513. Each of the six purposes is furthered to a much greater extent if the Government is required to bring its claim within six years of when the claim first could be sued upon rather than within six years of when the Government acquired the claim.

There are additional reasons stated in the legislative history which we believe undermine the Government's argument. These are found in the following excerpt of the "General Discussion" in the Senate Report.

The limitation periods fixed in the bill are similar to those fixed by Federal and State law for the same types of actions [e. g. contract, tort, tax]. While State laws, of course, show a variety of periods, it is possible to generalize and state that many jurisdictions provide a 6-year statute of limitation as to contract action and the limitations for tort proceedings in most cases are from 2 to 3 years. It is readily apparent that the provisions of this bill were drafted in recognition of these facts. This committee further notes that it is significant that the statute of limitations applicable to actions in the Court of Claims is 6 years and similarly the period for barring civil actions against the United States governed by section 2401(a) of title 28 of the United States Code is also fixed at 6 years.

News at 2508. We find that none of the analogies to be drawn from state statutes of limitations, from § 2501 for the Court of Claims or from § 2401(a) supports the Government's argument. First, as far as this court knows, no state provides for the statute of limitations on contract claims to run from the time the plaintiff acquires the claim. According to American Jurisprudence 2d, "[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff *could* have first maintained the action to a successful conclusion." 51 Am.Jur.2d *Limitations of Actions* § 107, at 679 (1970) (emphasis added; footnote omitted); *see generally id.* § 126 (limitations on contract actions).

Second, the statute of limitations in 28 U.S.C. § 2501 provides in pertinent part:

---

standards of fairness and equity." *Id.* "The emphasis on fairness . . . is a very important consideration and the principal basis for the bill." *Id.* at 2508.

**4.** The practical effect of the Government's interpretation is that in a state with a six-year

statute of limitations for contract actions, a claim could be outstanding for nearly 12 full years before the action would have to be brought by the Government to avoid the time bar.

"Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."[5] We have not been able to find a single case construing "first accrues" in § 2501 in which the court has held that the cause of action first accrues when the plaintiff acquires the claim rather than when the defendant Government's liability has been fixed.[6] E. g., Castro v. United States, 500 F.2d 436, 205 Ct.Cl. 534 (1974) (statute of limitations starts to run when it was finally possible to compute the extent and duration of taking, even though taking originated more than twenty years before); Nager Elec. Co. v. United States, 368 F.2d 847, 177 Ct.Cl. 234 (1966) (cause of action accrues when all events have occurred which fix the liability of defendant); Griffin v. United States, 77 F.Supp. 197, 110 Ct.Cl. 330 (1948) (statute of limitations runs from when the claim can be definitely ascertained), rev'd on other grounds sub nom. United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938 (1949); see cases cited in 28 U.S.C.A. § 2501 ns. 8, 9. Thus the interpretation of "first accrues" for the Court of Claims' statute of limitations, § 2501, is the same as that of state courts' interpretations of state statutes.

Third, none of the cases in 28 U.S.C.A. § 2401(a) ns. 70–76 supports the interpretation of "accrues" which the Government encourages this court to make. E. g., O'Connell v. United States, 37 F.Supp. 832 (E.D.Ill.1941) (action to recover personal property of decedent accrued at time of death of decedent, not when administrator was appointed). Thus the General Discussion in the Senate Report also supports this court's interpretation of § 2415(a).

We have no doubt that Congress could have enacted a statute with the effect the Government urges here. However, the words "after the right of action accrues" in 28 U.S.C. § 2415(a), are to be "interpreted in the light of the general purposes of the statute . . . and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." Reading Co. v. Koons, 271 U.S. 58, 62, 46 S.Ct. 405, 406, 70 L.Ed. 835 (1926) (interpreting "accrues" in Federal Employers' Liability Act as requiring an action for injuries resulting in death to be brought within two years from the time of death, not from the appointment of the administrator), cited affirmatively in Crown Coat, supra, 386 U.S. at 517, 87 S.Ct. 1177 (interpreting 28 U.S.C. § 2401(a) when there had been administrative proceedings). Like the Court in Koons, we believe that the general purposes of

---

5. The Attorney General's letter appended to the Senate Report is in accord with the statement in the Report's General Discussion. It states: "This time bar corresponds to the 6-year limitation on those who sue the Government on similar claims under the Tucker Act." News at 2513.

6. At first blush, United States v. Taylor, 104 U.S. 216, 26 L.Ed. 721 (1881), construing § 2501, appears to support by analogy the Government's interpretation of § 2415(a). There the Supreme Court held that a claim against the Government for surplus monies held in the United States Treasury subsequent to a sale of real estate for direct tax due the United States, accrues not when the sale is held, but when application is made to the Secretary of the Treasury. The Court analogized the case before it to the general rule that when a trustee unequivocally repudiates the trust and holds it for his own, the statute of limitations begins to run when the repudiation and claim are brought home to the cestui que trust in such a manner that he is called upon to assert his rights. Taylor is distinguishable from the case at bar first because this case does not involve a trust or anything similar to a trust and so the general rule for trusts is not particularly applicable here. Second, in Taylor the statute which provided that the surplus proceeds of the sale were to be held by the Secretary of the Treasury did not require that the person entitled to the proceeds make application within any time period. As the Court pointed out:

The fact that six or any other number of years had passed did not authorize [the Secretary] to refuse payment. The person entitled to the money could allow it to remain in the treasury for an indefinite period without losing his right to demand and receive it. It follows that if he was not required to demand it within six years, he was not required to sue for it within that time.

Id. at 221.

§ 2415(a) are furthered best if "accrues" is interpreted to mean that the statute begins to run when the claim first could have been sued upon, whether or not the Government has acquired it at that time. Furthermore, that construction eliminates both the potential defendant's uncertainty about how long he may be subject to suit, *Koons,* 271 U.S. at 62, 46 S.Ct. 405, and the possibility of holders, including the Government, unduly extending the time limitations of promissory notes guaranteed by the Government.

Having determined that the cause of action on the promissory note did not accrue when the Government received the note, we must determine when it did accrue. In the absence of any evidence that the law of any other state is applicable, we shall apply the Vermont law of contracts to the facts before us. *Crocker v. Brandt,* 130 Vt. 349, 351–52, 293 A.2d 541 (1972); *Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 234, 245 A.2d 891 (1968). We suspect that our decision to apply Vermont law would be the same even if we had evidence before us sufficient to determine the applicable choice of law according to the factors outlined in *Pioneer Credit.*[7]

█ Defendant argues that the cause of action on the entire note accrued on the date of default because the promissory note contains a waiver of demand allowing, the defendant asserts, the holder to sue on the total balance due at that time. For the reasons stated below, we are not persuaded by this argument and hold that a substantial portion of the note did not become due until the holder, City Savings Bank, invoked the acceleration clause and wrote defendant on March 11, 1971 demanding the entire balance due. First, the optional nature of an acceleration clause is not affected by the words "without demand or notice." A breach of a condition stated in an optional acceleration clause *permits* the holder to treat the entire debt as due, but the maturity date does not accelerate until he so treats it. 11 Am.Jur.2d *Bills and Notes* §§ 294, 296 (1963) (hereinafter *Bills and Notes* ). As the court said in *Moresi v. Far West Services, Inc.,* 291 F.Supp. 586, 588 (D.Hawaii 1968):

> The law is well settled that where the acceleration of the installment payments in cases of default is optional on the part of the holder, then the entire debt does not become due on the mere default of payment but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate, even though the note itself, as is the case here, waives notice of demand.

Second, were we to hold as defendant urges, the clause providing for acceleration "at the option of the holder" would have no force or meaning. In contrast, interpreting the waiver clause as we do gives force to both clauses: The waiver of demand allows the holder to sue on payments in default without making a formal demand for those payments, and the acceleration clause prevents default on the entire note until the holder exercises the option to accelerate.[8]

█ Third, the waiver of demand is for the benefit of the holder of a note, and the

---

7. The significant factors involved in the choice of law applicable, according to this doctrine are: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement, Conflict of Laws § 188 (Proposed Draft, Part II, May 1, 1968). In evaluating the relative importance of these contact points of the contract, the place of making and the place of performance are entitled to substantial weight in the choice of

the applicable law. *Haag v. Barnes,* 9 N.Y.2d 554, 216 N.Y.S.2d 65, 175 N.E.2d 441, 444, 87 A.L.R.2d 1301.

*Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 233, 245 A.2d 891 (1968).

8. Defendant's argument appears better directed to the question of when the statute of limitations began to run on the unpaid installments which were due prior to the time the holder exercised its option to accelerate. The parties have not addressed that question, and we do not. decide it at this time.

obligor should not be entitled to take advantage of his own wrong. The force of that theory can be seen in the "almost universal" rule that even absolute acceleration clauses are not self-operative but leave the holder the option of whether to take advantage of the provision. *Nickell v. Bradshaw*, 94 Or. 580, 599, 183 P. 12, 18 (1919); *Bills and Notes* § 294, at 318.

Fourth, although there is no Vermont case on point, *C & T Discount Corp. v. Sawyer*, 123 Vt. 238, 185 A.2d 462 (1962), supports our holding that demand must be made before the entire note becomes due. In that case, the defendant had signed a note with installment provisions left blank and an optional acceleration clause, and had agreed orally to repay in 100 equal installments. The court held that the option to accelerate was not exercised until the plaintiff brought the lawsuit and that the statute of limitations on the note did not begin to run in favor of the defendant until that demand was made. *See also Lyndon Sav. Bank v. International Co.*, 78 Vt. 169, 183–84, 62 A. 50 (1905). Similarly, the defendant in the case before us was not liable for the payments due after March 11, 1971 until the holder of the note exercised its right to accelerate those payments. Consequently, since the statute of limitations did not begin to run on those payments until demand was made, the Government's claim for at least those payments is not barred by 28 U.S.C. § 2415(a).

Accordingly, we hold that plaintiff's cause of action is not time barred.